UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 3:11-cr-00020-2 |
| | ) | Chief Judge Haynes |
| AUSTIN MICHAEL EVANS | ) | |

POSITION OF DEFENDANT AUSTIN MICHAEL EVANS WITH RESPECT TO
SENTENCING FACTORS AND MOTION FOR A MITIGATED SENTENCE
AND VARIANCE BELOW THE SENTENCING GUIDELINES

COMES NOW the Defendant, **Austin Michael Evans**, by and through his undersigned counsel, and pursuant to *Administrative Order No. 117-3* of the U.S. District Court for the Middle District of Tennessee and the Order of this Court, hereby files this position with respect to sentencing factors and request for a mitigated sentence and variance below the Guidelines, considering factors under 18 U.S.C. § 3553(a). Defendant Evans respectfully suggests that in weighing the factors in § 3553(a), the Court should impose a sentence of probation in this case which is below the guideline range calculated in the presentence report. In *United States v. Booker*, 543 U.S 220, 245, 125 S.Ct. 738, 160 L.Ed 2d 621 (2005), the Supreme Court held that the Sentencing Guidelines were advisory. Accordingly, "a district court is permitted to vary from those guidelines in order to impose a sentence which fits the mandate of [ § ] 3553(a)." *United States v. Collington*, 461 F.3d 805, 808 (6th Cir. 2006).

**Background**

This case arises out of a government-created reverse sting operation in which an undercover BATF agent posed as a disgruntled courier/employee for a local cocaine

organization.  The undercover agent represented that he was looking for persons to assist him in robbing his cocaine employer and initiated a plan to rob his employer's fictitious "stash house" supposedly housing kilogram quantities of cocaine and perhaps cash.  The reverse sting was scheduled to occur on December 16, 2010.  Austin Evans was eighteen years old at the time of the offense and had been recruited to participate in the reverse sting by Codefendant Jesse Pecora.  Mr. Pecora was thirty-three years of age at the time of the offense, was married and had a significant criminal history.  Austin Evans had left home at the age of seventeen and moved in with Mr. Pecora.  Evans was only seventeen when he became associated with Pecora and eighteen when he was invited by Pecora to participate in the plan.

On the day of the planned robbery, Messrs. Pecora, Whitaker and Evans met with the undercover agent at a storage unit in Nashville where the details of the robbery were discussed.  Although Pecora, Whitaker and Evans acted as if they were fully prepared to accomplish the home invasion robbery, they had no firearms, no ammunition, no disguises, no flex cuffs to inveigle the drug dealer robbery victims, and no mace or pepper spray to disable the inhabitants of the stash house.  In fact, eighteen-year-old Evans was dressed for the occasion in a blazer, dress slacks and loafers.

**I.     Challenges to the Criminal History Computations.**  *See ¶¶ 22 & 25 (Juvenile Adjudications)*, *30 (Judicial Diversion)* **and** *31 (Enhancement for Committing Instant Offense while under Criminal Justice Sentence)*.

The *first revised* Presentence Report (rec'd 7/22/13) assesses five points for the Defendant's criminal history resulting in an inflated Criminal History Category III.  The five points are derived from two juvenile adjudications (2 points), one diversionary disposition (1 point), and an enhancement for committing the instant offense while under

the diversionary disposition (2 points). Not only is the assessment of criminal history points textually inappropriate, it also has the effect of substantially over-representing the seriousness of Mr. Evans' criminal history.

A.   *Juvenile Adjudications, ¶¶ 22 & 25.*

Paragraphs 22 and 25 assess an aggregate two points for two uncounseled juvenile adjudications. The assessment of criminal history points for these challenged juvenile adjudications is inconsistent with the directions supplied by *Application Note 7* to U.S.S.G. §4A1.2:

> Attempting to count every juvenile adjudication would have the potential for creating large disparities due to the differential availability of records. * * * * Therefore, for offenses committed prior to age eighteen, only those that resulted in adult sentences of imprisonment exceeding one year and one month, or resulted in imposition of an adult or juvenile sentence or release from confinement on that sentence within five years of the defendant's commencement of the instant offense are counted.

A review of the records indicates that no "juvenile sentence" was imposed. Mr. Evans was merely placed on some form of juvenile probation. The record is silent on whether a sentence was imposed and specifically whether the imposition of that sentence was suspended. There is simply not enough information available to determine if the challenged juvenile adjudications meet the requirements of *Application Note 7*.

B.   *Judicial Diversion, ¶ 30*

As a juvenile, Mr. Evans was charged in the Juvenile Court for Sumner County, Tennessee, with burglary and theft. The case was transferred to the Criminal Court for Sumner County and the Defendant was "tried as an adult." On July 27, 2010, Mr. Evans entered into a judicial diversion agreement with the State of Tennessee and the proceedings were "deferred" pursuant to T.C.A. § 40-35-313 for a term of three years.

3

Significantly, there was no adjudication of guilt and no sentence was imposed on Mr. Evans.

Under Tennessee law, judicial diversion is a "legislative largess" which permits a defendant to complete a diversion program and have the charge dismissed and all records of the arrest, prosecution, etc., expunged. *State v. Robinson*, 139 S.W.3d 661, 665 (Tenn.Crim.App. 2004). "The purpose of judicial diversion is to avoid placing the stigma and collateral consequences of a criminal conviction on the defendant, in addition to providing the defendant a means to be restored fully to useful and productive citizenship." *State v. Johnson*, 980 S.W.2d 410, 413 (Tenn.Crim.App. 1998) (citing *State v. Porter*, 885 S.W.2d 93, 93 (Tenn.Crim.App. 1994)). The diversion statute acts to defer the entry of any judgment of conviction. When a defendant is granted judicial diversion there is no conviction within the meaning of *Tenn.R.Evid.* 609. *State v. Tolbert*, 2000 WL 1172344 (Tenn.Crim.App. Aug. 18, 2000). Since there was no "adjudication of guilt" found, this diversionary disposition should not be counted pursuant to U.S.S.G. § 4A1.2(f) ("Diversion from the judicial process *without a finding of guilt* (e.g., deferred prosecution) is *not* counted.") (emphasis added).

C.   *2-Point Enhancement, ¶ 31*

If the Court credits the Defendant's insistence regarding the diversionary disposition, then there would be no "criminal justice sentence" to trigger the enhancement contemplated by U.S.S.G. § 4A1.1(d). The proposed 2-point upward adjustment pushes Evans into Criminal History Category III.

Additionally, it would be anomalous for an eighteen-year-old offender to be assessed 5 criminal history points and saddled with an artificially inflated Criminal

4

History Category of III fueled by two juvenile adjudications and another juvenile matter transferred to adult court. Clearly, Mr. Evans' criminal history is overstated by the juvenile adjudications of his youth. A departure is authorized when the Criminal History Category does not adequately reflect the likelihood of recidivism. U.S.S.G. § 4A1.3, p.s., comment (backg'd).

## II. Grounds for Variance/Downward Departure

*The circumstances of this case are sufficiently extraordinary to warrant a variance/downward departure based on the Defendant's* ***Youth and his Susceptibility to Codefendant Pecora's Influence*** *and* ***the Need to Avoid Unwarranted Sentencing Disparities***.

A. *Youth and Susceptibility*

Given the facts of this case, a relevant sentencing consideration is the Defendant's age at the time of the offense and his susceptibility to the influence of his then-thirty-three-year-old Codefendant, Jesse Pecora, who was clearly the leader and organizer in assembling a crew to carry out the fictitious home invasion robbery of a drug dealer. As noted above, Evans was only seventeen when he left home and moved in with Mr. Pecora and his wife. He was eighteen at the time of the indicted conduct. Pecora recruited him and persuaded him to participate in the robbery. At the time Evans came under the spell of Mr. Pecora, he had no real life experiences and had dropped out of high school. Evans' youth and his susceptibility to Pecora's influence can be properly considered by this Court in imposing sentence. *United States v. Davis*, 458 F.3d 491, 498 (6th Cir. 2006) (stating that "age . . . may indeed be a legitimate basis for a variance"). *See also United States v. Keller*, 498 F.3d 316 (6th Cir. 2007). "As compared to adults, juveniles have a 'lack of maturity and an underdeveloped sense of responsibility'; they 'are more vulnerable or susceptible to negative influences and outside pressures, including peer

5

pressure'; and their characters are 'not as well formed.'" *Graham v. Florida*, 130 S.Ct. 2011, 2026 (2010) (quoting *Roper v. Simmons*, 543 U.S. 551, 569-70 (2005)).

B.     *The Need to Avoid Unwarranted Sentencing Disparities*

Title 18 U.S.C. § 3553(a)(6) directs that the sentencing judge shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." Undersigned counsel represented a similarly situated defendant in a case styled *United States of America v. Adam Yates*, *MDTN Case No. 3:11-00112 (Judge Sharp)*. (However, Mr. Yates was thirty-two years old at the time of his offense.) The *Yates* case arose out of another government-created reverse sting operation in which undercover FBI agents, posing as drug dealers, targeted the illegal activities and corrupt practices of Richard Wilson, a commissioned officer of the Metropolitan Nashville Police Department. Richard Wilson recruited Mr. Yates to assist him with a security detail involving the use of a three-vehicle "motor barricade" traveling between two locations on June 14, 2011. Although Yates indicated to an undercover officer that he had a gun, he in fact was unarmed. Similarly, Evans and his confederates indicated they had firearms but no one was armed. Just like Evans, Yates was indicted and charged with attempting to distribute five kilograms or more of cocaine for his role in the government sting. The government filed a superseding *Criminal Information* charging misprision of a felony. Yates received a sentence of three years probation.

The Sixth Circuit has observed that "this factor concerns national disparities between defendants with similar criminal histories convicted of similar criminal conduct—not disparities between codefendants." *United States v. Conatser*, 514 F.3d

6

508, 521 (6th Cir. 2008). There is a chasm between the recommended advisory guideline range in Mr. Evans' presentence report and the sentence of probation imposed in the *Yates* case for identical conduct. Clearly, this is precisely the type of "unwarranted sentence disparit[y]" targeted by 18 U.S.C. § 3553(a)(6).

## CONCLUSION

Defendant Evans respectfully requests that the Court evenly weigh all of the aforementioned factors and fashion an appropriate sentence in his case.

Respectfully submitted,

**TUNE, ENTREKIN & WHITE, P.C.**
Suite 1700, Regions Center
315 Deaderick Street
Nashville, Tennessee 37238
(615) 244-2770

BY: s/ Peter J. Strianse
PETER J. STRIANSE
Attorney for Defendant Evans

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing has been sent via the Court's electronic filing system unless not registered and, in that event deposited in the United States mail, postage prepaid, to:

>Philip H. Wehby
>Assistant United States Attorney
>110 Ninth Avenue South
>Suite A961
>Nashville, TN 37203-3870
>
>**Via Email**
>Liberty Lander
>U.S. Probation Officer

This 23th day of July, 2013.

>S:/ Peter J. Strianse
>PETER J. STRIANSE